ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY *v.* STATE USE CRAIGHEAD COUNTY.

Opinion delivered October 13, 1930.

*E. T. Miller, E. L. Westbrooke, Jr.,* and *E. L. Westbrooke,* for appellant.

*S. L. Gladish* and *A. W. Young,* for appellee.

BUTLER, J. The town council of the town of Bay, under the general powers conferred by § 4006 of Crawford & Moses' Digest, established a street in the town in

such a manner as to cross the roadbed and track of the St. Louis-San Francisco Railway Company and filed a petition under § 4009 in the Craighead Circuit Court. The hearing of the petition was set down by the court for June 25, 1929, at which time the railway company appeared and contested the proceeding on the ground that the town council no longer had authority to make the order establishing the street so that it would cross its roadbed, and that this authority had been divested by act of the Legislature, approved March 29, 1913, now § 1645 of Crawford & Moses' Digest. From a judgment adverse to appellant's contention it appealed to this court, which appeal resulted in an affirmance of the judgment of the circuit court on February 3, 1930. *St. L. S. F. Ry. Co.* v. *Bay,* 180 Ark. 1040, 23 S. W. (2d) 968.

On July 22 following the judgment of the circuit court, the town council gave notice to the railway com pany as provided by § 8484 of Crawford & Moses' Digest, requiring it to construct a crossing on and over its tracks as prescribed by § 8483, *Ib.* The twenty days within which it was required to construct a crossing after notice having expired, notice of that fact was filed with the clerk of the county court and by him communicated to the prosecuting attorney, who brought this suit to enforce the provisions of § 8486 providing for a penalty of not less than one hundred nor more than two thousand dollars for failure or refusal to construct the crossing, and $5 for every day such refusal or neglect should continue after the expiration of the twenty-day notice. This suit was filed on September 10, 1929, and summons served on defendant on September 13, 1929. An answer was filed by the railway company, the date of such filing not being given in the record. On the 21st day of February, 1930, the cause came on before the court sitting as a jury upon the pleadings and an agreed statement of facts, and a penalty was fixed in the sum of $100. The court found that 189 days had elapsed during which the railway company had failed and refused to comply with the order requiring it to

construct a crossing, and judgment was rendered for the said $100 and for a further penalty of $5 per day for 189 days, making a total of $1,045, from which judgment is this appeal.

It is the contention of the appellant that the trial court erred in assessing a penalty against it because at the time of the filing of its suit an appeal was pending in this court in the case of *St. Louis-San Francisco Ry. Co.*, appellant, v. *Town of Bay*, appellee, and that no right accrued to the appellee in this case to have any penalty assessed until after the case of *Railway Co.* v. *Town of Bay, supra*, had been decided and the mandate of this court handed down, and that the entering of a judgment for the penalty was a taking of the defendant's property without due process of law and in violation of the Federal Constitution. It is insisted by the appellant that the appeal in the case of *Railway Company* v. *Town of Bay, supra,* suspended and totally eliminated the charging of the railway company in the instant case with a penalty for not constructing the crossing under notice given by the town of Bay, and it further insists that the statute authorizing the collection of penalties was one from which no appeal was provided, and is itself void because its effect would be to deprive the appellant of its property without due process of law. This latter contention is refuted by the action of the appellant in the instant case, for here it has appealed and rightfully so under the general statute granting the right of appeal in all cases; and, as the Legislature did not attempt specifically or by any reasonable inference to debar or prevent an appeal, it must be deemed to have had in mind the general laws relating to appeals and intended that those should govern.

To sustain its contention that to enforce the penalty against the railroad company will deprive it of its property without due process of law, a number of cases are cited and extensively quoted, and it is insisted that the holding in those cases established appellant's contention

under the facts in the case at bar. It cites *S. W. Tel. & Tel. Co.* v. *Danaher*, 238 U. S. 482, 491, 35 S. Ct. 886, which case involved the validity of the statute imposing a penalty of $100 per day against the telephone company for denial of its service where such denial was the result of a rule promulgated by it. This rule was held by this court to be unreasonable, and the penalty properly assessed. In reversing that decision, the Supreme Court of the United States, speaking through Mr. Justice VANDEVENTER, said: "If it be assumed that the State Legislature could have declared such a regulation unreasonable, the fact remains that it did not do so, but left the matter where the company was well justified in regarding the regulation as reasonable and in acting on that belief." Continuing, the court said: "There was no intentional wrongdoing, no departure from any prescribed or known standard of action, and no reckless conduct. Some regulation establishing a mode of inducing prompt payment of the monthly rentals was necessary. It is not as if the company had been free to act or not, as it chose. It was engaged in a public service which could not be neglected. The protection of its own revenues and justice to its paying patrons required that something be done. It acted by adopting the regulation and then impartially enforcing it. There was no mode of judicially testing the regulation's reasonableness in advance of acting under it."

The next case relied upon by the appellant here is that of *Oklahoma Operating Company* v. *Love*, 252 U. S. 331, 40 S. Ct. 338, which was an appeal involving the enforcement of rate fixing orders made by the State Corporation Commission of Oklahoma. In holding the order invalid on constitutional grounds, the court reached its conclusion on the ground that "it appears that the only judicial review of an order fixing rates possible under the laws of the State was that arising in proceedings to punish for contempt. The Constitution endows the commission with the powers of a court to enforce its order by such proceedings. * * * By boldly violating an or-

der a party against whom it was directed may provoke a complaint; and if the complaint results in a citation to show cause why he should not be punished for contempt, he may justify before the commission by showing that the order violated was invalid, unjust, or unreasonable. If he fails to satisfy the commission that it erred in this respect, a judicial review is opened to him by way of appeal on the whole record to the Supreme Court. But the penalties which may possibly be imposed, if he pursue this course without success, are such as might well deter even the boldest and most confident.''

Another case relied on by the appellant is that of *Missouri* v. *Chicago, B. & Q. R. Co.*, 241 U. S. 533, 36 S. Ct. 715, where the rule was stated that a permanent injunction should issue to restrain enforcement of penalties accrued *pendente lite*, even though upon final hearing the maximum rates fixed should be found not to be confiscatory if the plaintiff had reasonable grounds to contest them as being such.

The case of *Ex parte Young*, 209 U. S. 123, 28 S. Ct. 441, cited by the appellant and extensively quoted, was an appeal in a case under a statute providing for the establishment of rates for railroad transportation without giving the corporation an opportunity to be heard and fixing penalties for disobedience of its orders by large fines and severe imprisonment. The case of *Mo. Pac. Ry. Co.* v. *Tucker*, 230 U. S. 340, 33 S. Ct. 961, cited by the appellant, was also a case involving the validity of an act prescribing penalties for failure of a carrier to comply with an order fixing the rate of charges for shipments over its lines. Finally, attention is called to the case of *Wadley Southern* v. *Georgia*, 235 U. S. 651, 35 S. Ct. 214, where the right of the Georgia Railroad Commission to fix penalties for failure to obey an order preventing discrimination between shippers is questioned.

From a survey of these cases it will be observed that the legality of all of the orders involved was not apparent on the face of the order and the statute conferring the

right to make the same, but depended upon a showing of some extraneous fact which might or might not exist and upon testimony to establsh it, and the decision of some tribunal. As is said in *Wadley Southern* v. *Georgia, supra*: "Their legality is not apparent on the face of such orders, but depends upon a showing of extrinsic facts. A statute therefore which imposes heavy penalties for violation of commands of an unascertained quality is, in its nature, somewhat akin to an *ex post facto* law, since it punishes for an act done when the legality of the command has not been authoritively determined. Liability to a penalty for violation of such orders, before their validity has been determined, would put the party affected in a position where he himself must at his own risk pass upon the question. He must either obey what may finally be held to be a void order, or disobey what may ultimately be held to be a lawful order. If a statute could constitutionally impose heavy penalties for violation of commands of such disputable and uncertain legality the result inevitably would be that the carrier would yield to void orders, rather than risk the enormous cumulative or confiscatory punishment that might be imposed if they should thereafter be declared to be valid."

In the statute under consideration in the case at bar there is no dependence upon a showing of extrinsic facts that may affect its validity. There is no command of an "unascertained quality or of disputable and uncertain legality." Here is a power expressly and in unmistakable terms conferred on the city council to lay out the streets; the duty, in equally express terms, imposed upon railroads to construct crossings on such streets over its roadbed and tracks, a reasonable time being given to make such construction after notice, and for a willful failure to comply with the plain legislative mandate a penalty fixed which in no wise can be said to be confiscatory. We therefore think the cases cited by counsel for the appellant have no application. It cannot be questioned that the State may impose penalties to compel obedience

to its mandates, and that the due process clause of the Federal Constitution has no power to override the power of the State to establish all regulations that are reasonably necessary to secure the health, safety and general welfare of the community and to enforce same by the imposition of reasonable penalties, and all property rights are held subject to the fair exercise of such power. The statutes here involved are clear and explicit, and it is no excuse for a failure to obey the order in this case, made by virtue of powers conferred by such statute, that in the opinion of appellant that statute was superseded by the enactment of another; nor was it ground for the suspension of the penalties pending the interval in which appellant was prosecuting its appeal in the case of *Railway* v. *Town of Bay, supra.* The statute conferring the power upon the Corporation Commission, approved March 29, 1913, to designate and order crossings over railroads, by its express terms was not to be construed as amending or repealing the statute by which city councils were given the authority to lay off streets and to require railroad companies to construct crossings on said streets where they passed across the line of railroad. This has been impliedly recognized by the legal profession and the courts of this State for the procedure in crossing cases continued to be pursued by town and city councils after the passage of the act of March 29, 1913, as before, as is pointed out in *St. L. S. F. R. Co.* v. *Bay, supra.* It was generally recognized that statutes such as that of March 29, 1913, conferring powers on public service commissions to require the construction of crossings did not deprive cities and towns of like powers which had previously been conferred on them by legislative grant. See *Atlantic Coast Line* v. *Goldberger,* 155 N. C. 362, which case on appeal to the United States Court was affirmed in 232 U. S. 548, 34 S. Ct. 364; also *City of Durham* v. *So. Ry. Co.,* 185 N. C. 240, 117 S. E. 17, 35 A. L. R. 1313.

We must indulge the presumption that the order of the town council of Bay laying off the street and requiring the crossing was a matter involving the public safety and general welfare of the community, and, in view of the unambiguous terms of the statutes governing the construction of railroad crossings and the views of the courts construing such statutes, the appellant in this case did not have the right to refuse to comply with the order of the circuit court condemning the right-of-way at the instance of the town council or its refusal to comply with the notice to construct the crossing. It received its permit to do business in this State and to construct its lines of railway burdened with the statute requiring it to construct crossings on streets to be opened by town councils, and was under the implied obligation to construct suitable crossings at new streets. It had no right to refuse to comply with this duty and to suspend the penalties for its dereliction while it was litigating an order made under a statute which no subsequent act had attempted to repeal or amend, either expressly or by implication. It deliberately planted its refusal to comply with the order on the ground that it was invalid for want of power because of the effect of the act approved March 29, 1913, and thus delayed and interfered with the public safety and welfare of the people in the town of Bay and that vicinity. It did this at its peril, and, having failed in the contentions made by it in the case of *Ry. Co.* v. *Bay, supra,* it must now abide the consequences.

The judgment of the lower court is therefore affirmed.