**Clifton Earl JOHNSON, Plaintiff,**

v.

**SOUTHERN RAILWAY COMPANY and City of Charlotte, Defendants.**

No. C–C–86–0023–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Feb. 18, 1987.

Thomas B. Rallings, Jr., Mitchell & Rallings, Charlotte, N.C., for plaintiff.

Hunter M. Jones, Southern Ry. System, Law Dept., Fred C. Meekins, Golding, Crews, Meekins & Gordon, Charlotte, N.C., for defendants.

## MEMORANDUM OF DECISION AND ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Defendant Southern Railway Company's

("Southern") Motion, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, to determine before trial Southern's "First Defense to Second Cause of Action," its "Third Defense to Third Cause of Action," and its "Third Defense to First Cause of Action."

All of the above defenses contend that insofar as the causes of action in the Complaint are based on the alleged violations of the Ordinance of the City of Charlotte governing the speed of trains through the City, such speed ordinance violates Article I, Section 8, and Article VI, Clause 2 of the Constitution of the United States and the Federal Railway Safety Act of 1970, 45 U.S.C. § 421, *et seq.* The Court agrees.

A hearing was held in Charlotte, North Carolina on January 30, 1987 at which Thomas B. Rallings, Attorney at Law, appeared for the Plaintiff and Hunter M. Jones and Harry C. Hewson, Attorneys at Law, appeared for Defendant Southern. Fred C. Meekins, Attorney at Law, appeared for Defendant City of Charlotte.

## DISCUSSION

This case arose as a result of a collision between Defendant Southern's train and an automobile in which the Plaintiff was a passenger. The collision occurred in the City of Charlotte at approximately 11:00 o'clock p.m. on January 18, 1984 at the crossing of Hebron Street and Defendant Southern's track. The driver of the automobile was killed and the Plaintiff was injured, for which he received damages from the driver's estate and is now seeking damages from Defendant Southern.

Article I, Section 8, Clause 3 of the Constitution provides:

The Congress shall have power to regulate commerce ... among the several States....

Article VI, Clause 2, of the Constitution provides:

This Constitution, and the Laws of the United States which shall be made in pursuance thereof; ... shall be the supreme Law of the land; and the Judges in every State shall be bound thereby, any thing in the Constitution or Laws of any State to the Contrary notwithstanding.

Title 45, Section 434 (Federal Railroad Safety Act) provides:

The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A *State* (emphasis added) may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement.

A *State* (emphasis added) may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety *when necessary to eliminate or reduce an essentially local safety hazard* (emphasis added) and when not incompatible with any Federal law, rule, regulation, order, or standard, and *when not creating an undue burden on interstate commerce* (emphasis added).

The plain meaning of the Act is that a *State,* in this case, North Carolina, may adopt a law relating to railroad safety, such as a limitation on speed when necessary to eliminate or reduce an essentially local safety hazard and when not creating an undue burden on interstate commerce.

The Plaintiff argues that North Carolina General Statute Section 160A–195 is an enabling statute which expressly authorizes cities to pass ordinances regulating the speed of trains within City limits. The difficulty with that argument is that Section 434 says a *State* may adopt the law, rule, or regulation. It does not say the State may delegate to the cities and towns in the State the power to do so. Even though the State may delegate powers to its State created municipalities through enabling statutes, there is no authority for the proposition that the State may delegate to its cities powers it is authorized by Congress to exercise. Congress is presumed

to use words in their ordinary sense unless it expressly indicates the contrary. *Davis Bros., Inc. v. Donovan,* 700 F.2d 1368, 1370 (11th Cir.1983).

Not only the words of Section 434 convey the meaning that it is only the State that can regulate the speed of trains, but not even the State is not authorized to do so, unless necessary to eliminate or reduce an essentially local safety hazard *and* when not incompatible with any Federal law, rule, regulation, order or standard *and* when not creating an undue burden on interstate commerce. To interpret Section 434 to mean that every city and town in North Carolina could impose a speed limit on the movement of trains would result in the creation of a morass that would literally bring interstate commerce, or any commerce, on a railroad to a dead stop. To permit such a condition to exist would clearly be an undue burden on interstate commerce. To permit such a web of blanket speed limits in towns would not require any determination by the State that such a speed limit was necessary to eliminate or reduce essentially local safety hazards. On the contrary, to permit every city, town, and hamlet to determine speed limits of trains would permit every political demagogue to slow commerce to a standstill for his political benefit. Clearly, Congress did not intend such results.

Assuming, *arguendo,* that the City of Charlotte does have the authority under Section 434 and G.S. 160A–195, the City of Charlotte has made no determination that the Hebron crossing was an essentially local safety hazard as it has apparently done as to certain streets in the City.

Chapter 15 of the 1961 Code of the City of Charlotte (recodified in 1985 as Section 17–2) provides that Southern on its Atlanta to Washington double track shall maintain gates or flagmen at certain crossings and trains shall be restricted to certain speeds across some streets. These restrictions appear reasonable. But to paint with a broad brush and slow all trains on all tracks in the City of Charlotte whether protected by signals or other barriers is clearly burdensome on interstate commerce and does not come with the exceptions in Section 434.

The Plaintiff argues:

(1) Constitutional and other questions of large public import should not be decided on an inadequate factual basis. This Court agrees. However, the undisputed facts are:

(a) Congress has the power to regulate interstate commerce;

(b) The Secretary of Transportation pursuant to the Federal Railroad Safety Act and through the Federal Railroad Administration has promulgated regulations as to the speed of railroad trains on different classes of track (see 49 C.F.R. Parts 213 and 236). This demonstrates that through the Act Congress has intended to preempt the regulation of speed of trains. *Donelon v. New Orleans Terminal Co.,* 474 F.2d 1108 (5th Cir.1978 [1973]), *cert. denied,* 414 U.S. 855 [94 S.Ct. 157, 38 L.Ed.2d 105 (1973)];

(c) Only the *State* may adopt a law relating to railroad safety and then only when

(i) the State determines the law necessary to eliminate or reduce an essentially local safety hazard *and*

(ii) the State law is not incompatible with Federal law; *and*

(iii) when the State law does not create an undue burden on interstate commerce.

The *State* has not enacted any law governing train speeds in Charlotte, *and*

The *State* (or the City for that matter) has not made a determination that the Hebron Street crossing was an essentially local safety hazard; *and*

The speed limits set by the City of Charlotte are manifestly incompatible with the Federal law as promulgated in the Secretary's regulations pursuant to the Federal Railroad Safety Act; *and*

To permit the City of Charlotte and other cities along the railroad right of way to slow trains to twenty five miles an hour, or any similar speed would be

an undue burden on interstate commerce.

(2) Numerous cases show that *States may regulate under the local safety hazard clause.* The Court agrees. However, the Plaintiff has not cited one case, nor has this Court found one, which decides that every city and town may impose (through enabling statutes) blanket speed limits on train movements through the city or town.

The Plaintiff argues that *Atlantic Coast Line Railroad Co. v. City of Goldsboro,* 232 U.S. 548, 34 S.Ct. 364, 58 L.Ed. 721 (1914) supports the Plaintiff's contention that a municipal by-law or ordinance enacted by virtue of power for that purpose delegated by the legislature of the State, is a State law within the meaning of the Federal Constitution. The Plaintiff has misinterpreted the meaning of that case, which held that local ordinances are state law within the meaning of 28 U.S.C. § 1257 for the purpose of determining the appellate jurisdiction of the Supreme Court.

Further, the speed limit having been enacted by the City before Section 434, and before Hebron Street was in the City limits, it can hardly be argued that the City determined the Hebron crossing to be "an essentially local safety hazard" when the ordinance was adopted.

## CONCLUSIONS OF LAW

Therefore, the Court makes the following conclusions of law:

(1) Upon adoption in 1971 by the Federal Railroad Administration of the regulations contained in 49 CFR Part 213, the regulation of train speeds throughout the United States was preempted by the National Railroad Safety Act of 1970, 42 U.S.C. § 421 *et seq.* and the regulations enacted thereunder, except as provided in said section that "A state may adopt or continue in force an additional or more stringent law, rule, regulation, order or standard when necessary to eliminate or reduce an essentially local safety hazard, when not incompatible with any federal law, rule, regulation, order or standard, and when not creating an undue burden on interstate commerce."

(2) The power of a state to continue in force laws, rules, regulations, orders or standards under the exception quoted in the foregoing conclusion may not be delegated to municipalities.

(3) The ordinances of The City of Charlotte contained in § 15-2 of the Code of 1961 and in § 17-2 of the Code of 1985 are not necessary to eliminate or reduce an essentially local safety hazard within the meaning of the exception quoted in Conclusion No. 1.

(4) Defendant Southern is entitled to summary judgment against the Plaintiff dismissing all claims asserted in the Complaint in the "First Cause of Action," "Second Cause of Action," and in the "Third Cause of Action" insofar as they are based on ordinances of The City of Charlotte undertaking to limit train speeds, and it shall not be permissible to make reference to train speed ordinances of The City of Charlotte upon the trial of the Plaintiff's action against the Defendants.

(5) Defendant Southern is entitled to summary judgment on its crossclaim against The City of Charlotte declaring § 15-2 of the 1961 Code of the City of Charlotte void and of no effect.

(6) Defendant Southern is entitled to summary judgment on its crossclaim against The City of Charlotte declaring § 17-2 of the 1985 Code of the City of Charlotte void.

Partial Summary Judgment will be filed simultaneously with this Memorandum of Decision and Order.

## ORDER

The Order filed February 18, 1987 dismissing the above-entitled action against the City of Charlotte is amended to read:

In accordance with the Memorandum of Decision filed in this case on February 18, 1987, the Plaintiff's Cause of Action against the City of Charlotte is *DISMISSED* with prejudice.

## ORDER

In accordance with the Memorandum of Decision filed in this case on February 18, 1987, the Plaintiff's Third Cause of Action against the City of Charlotte for punitive damages for failure to enforce train speed limits within the City of Charlotte is DISMISSED with prejudice.