**CHESAPEAKE & OHIO RAILWAY COMPANY, Plaintiff,**

v.

**CITY OF BRIDGMAN, Defendant.**

**No. K85–531 CA4.**

United States District Court,
W.D. Michigan, S.D.

Sept. 17, 1987.

Frasco, Hackett & Mills by Patrick E. Hackett, Bloomfield Hills, Mich., Fisher, Troff & Fisher by Roger Alan Petzke, St. Joseph, Mich., Sally J. Kircher, Chessie System Railroads, Cleveland, Ohio, for plaintiff.

Globensky, Gleiss, Henderson & Bittner by Henry W. Gleiss, St. Joseph, Mich., for defendant.

## OPINION

BENJAMIN F. GIBSON, District Judge.

This cause of action stems from a City of Bridgman ("City") ordinance, passed on March 7, 1977, which limits the speed of trains passing through the City limits. In its pertinent part, the ordinance states:

It shall be unlawful for a railroad company to permit its trains to travel at a rate of speed in excess of 30 miles per hour within the City Limits of Bridgman. Bridgman, Mich., Ordinance No. 61 (March 7, 1977).

After unsuccessfully attempting to persuade the City to repeal the ordinance, the plaintiff Chesapeake and Ohio Railway Company ("C & O") brought this action praying for injunctive and declaratory relief on the grounds that the ordinance violates the Supremacy and Commerce Clauses of the United States Constitution, Art. VI, Cl. II and Art. I, Cl. III, § VIII, respectively. The City, in its answer, defended on the basis of laches and counterclaimed for any expenses it might incur in erecting additional safety devices should the ordinance be struck down.

Presently pending are C & O's motion for summary judgment on its claim for relief and C & O's motion for summary judgment on the counterclaim. For the following reasons, the two motions are granted.

## I.

### MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only where no genuine issue of material fact remains to be decided so that the moving party is entitled to judgment as a matter of law. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Sons, Inc.*, 668 F.2d 905, 908 (6th Cir.1982), *See Willetts v. Ford Motor Co.*, 583 F.2d 852, 854 (6th Cir.1978); *Felix v. Young*, 536 F.2d 1126, 1130 (6th Cir.1976). C & O bears the burden of clearly establishing that there exists no issue of fact material to a judgment in their favor. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *United States v. Articles of Device*, 527 F.2d 1008, 1011 (6th Cir.1976). In determining whether or not there exist issues of fact requiring a trial, the inferences to be drawn from the underlying facts contained in the affidavits, attached exhibits, depositions, and answers to interrogatories must be viewed in the light most favorable

to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bohn Aluminum & Brass Corp. v. Storm King Corp.,* 303 F.2d 425, 427 (6th Cir. 1962).

In support of its motion for summary judgment, C & O asserts that federal law preempts the City ordinance rendering it void under the Supremacy Clause of the United States Constitution, Art. VI, Cl. II. Since the parties contest no issues of fact material to the preemption question, this motion sets forth a purely legal issue suitable for summary judgment disposition.

■ It is well established that Congress has the power to preempt state and municipal authority in a particular field. *Wardair Canada v. Florida Dept. of Revenue,* 477 U.S. 1, 106 S.Ct. 2369, 2372, 91 L.Ed.2d 1 (1986); *Pacific Gas and Electric Co. v. State Energy Resources Conservation and Development Commission,* 461 U.S. 190, 203, 103 S.Ct. 1713, 1721–22, 75 L.Ed.2d 752 (1983); *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977). In determining whether federal legislation preempts state and local law, the test is one of Congressional intent. *Wardair, supra,* 106 S.Ct. at 2372; *Jones, supra* 430 U.S. at 526, 97 S.Ct. at 1310; *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). Where Congress expressly prohibits states and municipalities from legislating in a certain area, preemption is manifest. *Fidelity Federal Savings and Loan Association v. De La Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). Otherwise, preemption may be inferred where state or municipal law "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *California Coastal Commission v. Granite Rock Co.,* — U.S. —, 107 S.Ct. 1419, 1425, 94 L.Ed.2d 577 (1987); *Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984); *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

In enacting the Federal Railroad Safety Act, Congress announced its preemption intention as follows:

The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

45 U.S.C. § 434. Courts construing this act have uniformly found that Congress intended to preempt state and local railway safety legislation. *National Association of Regulatory Utility Commissioners v. Coleman,* 542 F.2d 11 (3rd Cir.1976); *Donelon v. New Orleans Terminal Co.,* 474 F.2d 1108 (5th Cir.1973), *cert. denied,* 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973); *Atchison, Topeka & Santa Fe Railway Co. v. Illinois Commerce Commission,* 453 F.Supp. 920 (N.D.Ill.1977).

The legislative history, as well, supports the conclusion that Congress intended to preempt state and local regulation for railway safety:

[T]he railroad industry has very few local characteristics. Rather, in terms of its operations, it has a truly interstate character calling for a uniform body of regulation and enforcement.

H.R.Rep. No. 91–1194, 91st Cong., 2d Sess., *reprinted in* 1970 U.S.Code Cong. & Admin.News 4104, 4110.

Congress, however, authorized two exceptions to the rule of uniform regulation and enforcement. The first exception allows states to adopt new rules or maintain its enforcement of rules already in effect

until the Secretary of Transportation promulgates railway regulations covering the same subject matter. *See* 45 U.S.C. § 434. The Secretary of Transportation has passed regulations covering train speed limits in 49 C.F.R. § 213.[1] Consequently, this exception does not apply to the City ordinance.

Under the second exception, set forth in the third sentence of 45 U.S.C. § 434:

[a] State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.

The City correctly observes that the relevant inquiry is whether the ordinance falls within the criteria listed in this exception. Clearly, the ordinance is more stringent than federal law. The ordinance prohibits train speeds above 30 miles an hour. The Federal Railroad Administration, on the other hand, allows C & O trains to travel at speeds up to 50 miles an hour.

The plain language of the exception, however, indicates that only a *state* may adopt a more stringent railway safety law in response to a local safety hazard. *Johnson v. Southern Railway Co.*, 654 F.Supp. 121, 122–23 (W.D.N.C.1987). Congress is presumed to use words in their ordinary sense unless it expressly indicates the contrary. *Henry T. Patterson Trust by Reeves Banking & Trust Co. v. United States*, 729 F.2d 1089 (6th Cir.1984); *David Bros., Inc. v. Donovan*, 700 F.2d 1368 (11th Cir.1983). Since municipalities are not included in this preemption exception, municipalities are preempted from passing more stringent train speed limits than those set out in 49 C.F.R. § 213. *Donelon, supra*, 474 F.2d at 1112; *Consolidated Rail Corp v. Smith*, 664 F.Supp. 1228 (N.D.Ind.1987); *Johnson, supra*, 654 F.Supp. at 122–23;

*Sisk v. National Railroad Passenger Corp.*, 647 F.Supp. 861, 865 (D.Kan.1986). In short, neither of Congress' preemption exceptions apply to municipal train speed limits, and the municipal speed limits are preempted under the Supremacy Clause of the U.S. Art. VI, Cl. II.

Finally, the City claims that laches bars the plaintiff's action. The City asserts in its answer that C & O knew about the ordinance shortly after its passage in 1977 and "has done nothing until this past year about it being invalid and has accepted its existence over a period of some several years."

■ Assuming this to be true, the City has not stated sufficient facts to support an affirmative defense of laches. Under Michigan law, delay in asserting one's rights, even if unreasonable, does not in itself constitute laches. *Backus v. Backus*, 207 Mich. 690, 175 N.W. 400 (1919). Defendant must also show that the delay has caused a change of conditions which renders plaintiff's claim inequitable or that the delay has prejudiced the defendant. *Olitkowski v. St. Casimir's Savings and Loan Ass'n*, 302 Mich. 303, 4 N.W.2d 664 (1942); *Carey v. Lauhoff*, 301 Mich. 168, 3 N.W.2d 67 (1942). The defendant, however, has failed to allege any facts tending to demonstrate that it has been prejudiced or injured by the delay. Therefore, the City's defense of Laches must fail, and C & O is entitled to summary judgment as a matter of law.

## II.

### MOTION FOR SUMMARY JUDGMENT ON BRIDGMAN'S COUNTERCLAIM

Also pending is C & O's motion to dismiss the City's counterclaim. The Court has looked at the pleadings and the answers to plaintiff's interrogatories. Accordingly we will decide this motion as one for summary judgment. Fed.R.Civ.Proc. 12(b). As stated earlier, the proponent of a motion for summary judgment has the bur-

1. 49 C.F.R. § 213 establishes train speed limits based upon a variety of factors. For example, gage measurements, alinement, degree of curvature in the track are among the factors that determine the speed limits. According to the

affidavit of Walter B. Vander Veer, C & O has submitted a timetable speed of 50 miles an hour for trains travelling through the City of Bridgman, which is within the federal speed regulations.

den of showing that there exists no issue of fact material to judgment in his favor. *Articles*, 527 F.2d at 1011.

In its answer, the City counterclaims for "a further order requiring the Chesapeake and Ohio Railway to reimburse the City of Bridgman for any costs it might incur for additional traffic safefty [sic] equipment." The City so far has spent nothing on new safety devices. According to its answers to C & O's interrogatories, it has not even solicited any estimates for work that "might" be done. Consequently, the City asks this Court to simply declare that it is entitled to reimbursement from C & O for any safety equipment it should decide to construct. The Court declines to exercise jurisdiction over this claim for declaratory relief because it presents a non-justiciable matter.

Jurisdiction to award declaratory relief exists only in "a case of actual controversy." 28 U.S.C. § 2201. The test is whether the facts alleged show that there is a substantial controversy between the parties having adverse legal interest of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). The Court is not authorized to render advisory opinions based upon hypothetical facts which may never come into being. *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

The Sixth Circuit has established the following considerations for determining whether declaratory judgment is appropriate: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for "procedural fencing" or as an arena for a race for res judicata; (4) whether the use of a declaratory action would increase friction between state and federal courts; and (5) whether there is an alternative remedy which is better or more effective. *American Home Assurance Co. v. Evans*, 791 F.2d 61, 63

(6th Cir.1986). Whether the court exercises its power to entertain a declaratory action remains, however, discretionary. *Grand Trunk Western R.R. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

Applying these standards, we find that the City's counterclaim is non-justiciable. The City relies on M.C.L. §§ 469.5 and 469.35 to support its counterclaim. M.C.L. § 469.5 authorizes the "highway authorities" to apportion expenses in erecting crossbucks. M.C.L. § 469.35 authorizes the Michigan Public Utilities Commission to apportion expenses in erecting safety equipment on all railroad crossings and street railways existing at the time of the passage of the act. If this Court were to decide in the City's favor, it is not clear that such a determination would be binding on those who might be authorized under state law to apportion expenses in erecting railroad safeguards. Consequently, this court's decision would only be advisory and would not settle the controversy between the parties.

Moreover, there is an alternative remedy which is more effective. The Michigan Public Service Commission, to the extent authorized by Michigan law and not preempted by the Federal Railroad Safety Act (45 U.S.C. § 434),[2] is better qualified to determine what railway safeguards are needed and to apportion the expenses for their construction. The state statutes cited by the City grant no power of authority to this Court, and we conclude that the agencies mentioned in the statute would be a more effective remedy for the City.

## CONCLUSION

For the reasons stated above, the Chesapeake and Ohio Railway Company's motion for summary judgment on its claim for relief and its motion for summary judgment on the City of Bridgman's counterclaim are hereby granted.

**2.** The Court expresses no opinion on either issue.