The Honorable Stanley Russ State Senator Post Office Box 787 Conway, AR 72032
Dear Senator Russ:
This is in response to your request for an opinion on the law relating to the construction of railroad crossings. Specifically, you have attached a letter, presumably from a constituent, explaining that the City of Mayflower has approved the development of a city street that will cross a railroad near Mayflower. The letter states that after years of "trying to get the railroad to do its part" there is still no crossing at the location.* The letter then inquires as to what the state law is pertaining to railroads and their responsibility when a city street needs a crossing. The letter also inquires as to any applicable federal laws which may preempt the state laws.
The relevant Arkansas law, in my opinion, is A.C.A. § 23-12-305, which provides in pertinent part as follows:
 (a) Whenever a railroad company or corporation has constructed or constructs a railroad across any public road, highway, or street in any incorporated city or town of this state or where any public road, highway, or street of any incorporated city or town crosses any railroad, the railroad company or corporation shall be required to so construct the railroad crossing or so alter or construct the roadbed of the public road, highway, or street of the incorporated city or town that the approaches to the railroad bed, on either side, shall be made and kept at no greater elevation or depression than one (1) perpendicular foot for every five feet (5') of horizontal distance, such elevation or depression being caused by reason of the construction of the railroad. However, at any crossing of any public highway, the railroad may be crossed by a good and safe bridge, to be built and maintained in good repair by the railroad company or corporation owning or operating the railroad.
The section goes on to provide that when any railroad company or corporation refuses to construct the crossing, the overseer of the public road shall give a copy of a notice to the railroad directing it to construct the crossing within the next twenty days. A.C.A. § 23-12-305(b). If the railroad still fails to comply, the overseer is to file the original of the notice with the county clerk, and the county clerk is to give notice to the prosecuting attorney, who shall then institute suit against the railroad company. A.C.A. § 23- 12-305(d).
This procedure has been held constitutional (St. Louis-San Francisco Railway Company v. State, 182 Ark. 409 (1930)) and has been held to be an alternative procedure to the one authorized in A.C.A. § 23-12-304. St. Louis-San Francisco Railway Company v. State, supra, and St. Louis-San Francisco Ry. v. Town of Bay, 180 Ark. 1040, 23 S.W.2d 968
(1930).
The statute formerly applied only when a railroad crossed an existing road (Prairie County v. Fink, 65 Ark. 492 (1898)), but the statute was amended by Act 6 of 1899 to also require the railroad to construct a crossing when a new city street crosses the existing railroad line. Additionally, the statute was held in United v. St. Louis Southwestern Railway Co., 246 Ark. 941, 440 S.W.2d 251 (1969) to require the railroads to improve only that portion of the roadway between their tracks and to the end of the cross ties on each side. See A.C.A. § 27-67-214. The Arkansas Supreme Court, as recently as 1989, has interpreted the statute as requiring the railroads to construct crossings even where the crossing is not to be located in an incorporated city or town. Dena Construction Co., Inc. v. Burlington Northern Railroad, 297 Ark. 547, 764 S.W.2d 419
(1989).
Thus, in response to the first part of your question, A.C.A. § 23-12-305
is the relevant state law, and the procedure set out therein, which places the duty to enforce its provisions on the road overseer, county clerk, and prosecuting attorney, should be followed in an effort to secure the crossing.**
Given the relevant Arkansas law, there are two potential impediments which might operate to nullify it. One is the issue of the statute's constitutionality, and the other is the question of whether the statute is federally preempted. We will address the statute's constitutionality first.
Statutes requiring railroads to construct crossings where a public road crosses its line have been held constitutional. See, e.g., Erie Railroad Co. v. Board of Public Utility Commissioners, 254 U.S. 394 (1921); and Atchison, Topeka and Santa Fe Railway Company v. State, 683 P.2d 974
(Okla. 1985). See also St. Louis-San Francisco Ry. Co. v. State, supra. In Erie, it was stated that:
 Grade crossings call for a necessary adjustment of two conflicting interests, that of the public using the streets and that of the railroads and the public using them. Generically the streets represent the more important interest of the two. There can be no doubt that they did when these railroads were laid out, or that the advent of automobiles has given them an additional claim to consideration. They always are the necessity of the whole public, which the railroads, vital as they are, hardly can be called to the same extent. Being places to which the public is invited, and that it necessarily frequents, the state, in the care of which this interest is, and from which, ultimately, the railroads derive their right to occupy the land, has a constitutional right to insist that they shall not be made dangerous to the public, whatever may be the cost to the parties introducing the danger. That is one of the most obvious cases of the police power; or, to put the same proposition in another form, the authority of the railroads to project their moving masses across thoroughfares must be taken to be subject to the implied limitation that it may be cut down whenever and so far as the safety of the public requires. 254 U.S. at 410. See also 65 Am.Jur.2d Railroads § 273, and 74 C.J.S. Railroads § 156(d)
The tougher question may be whether the statute is preempted by the "Federal Railroad Safety Act," codified at 45 U.S.C. § 421 et seq. The relevant provision is 45 U.S.C. § 434, which provides as follows: The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order or standard covering the subject matter of such State requirement. A state may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce.***
This section has been interpreted as expressly providing for state regulation of railroad safety in two limited situations: (1) where the federal government has not acted; and (2) where (a) necessary to eliminate or reduce an essentially local safety hazard, (b) there is no incompatible federal regulation, and (c) the state regulation does not create an undue burden on interstate commerce. Santini v. Consolidated Rail Corp.,505 N.E.2d 832 (Ind.App. 1987). See also Southern Pacific Transportation v. Public Utilities Comm., 647 F. Supp. 1220
(N.D.Cal 1986), aff'd 820 F.2d 1111 (9th Cir. 1987).
There are numerous cases involving the preemption of local laws by the Federal Railroad Safety Act. In many instances, states or municipalities have passed railway speed limits, which have been held to be preempted by the act. See, e.g., Consolidated Rail Corp. v. Smith, 664 F. Supp. 1228
(N.D.Ind. 1987); Sisk v. National R.R. Passenger Corp., 647 F. Supp. 861
(D.Kan. 1986); Johnson v. Southern Ry. Co., 654 F. Supp. 121 (W.D.N.C. 1987); and Southern Pacific Transportation Company v. St. Charles Parish Police Jury, 569 F. Supp. 1174 (E.D.La 1983). While these cases are helpful on the general topic, they do not involve the question of whether a state may require a railroad to construct crossings at particular locations, and are thus inapposite.
It has also been concluded, however, that the Secretary of Transportation has delegated federal authority to regulate grade crossings to local agencies, and that the question of what constitutes adequate crossing warning devices is up to the local agency to determine. Marshall v. Burlington Northern, Inc. 720 F.2d 1149 (9th Cir. 1983). See also 45 U.S.C. § 433, 23 U.S.C. § 401 ("The Highway Safety Act of 1966"), and 23 U.S.C. § 655.601.
The court in Santini, supra, also stated that "we find no federal authority regulating the installation or maintenance of crossing safety gates." 505 N.E.2d at 839.
It is my opinion that neither the federal act, nor any of the cases construing it, are perfectly apposite on the precise question presented here. The "Federal Railroad Safety Act" regulates the SAFETY of many aspects of the operation or railroads. It does not precisely address the authority of the state to require a railroad to provide a "crossing" where a new road is constructed.**** As was stated in Erie, supra, "(t)he power of the state over grade crossings derives little light from cases on the power to regulate trains." 254 U.S. at 410. There simply are no federal regulations covering where, in what instances, and in what manner, crossings are to be constructed. See Santini, supra. The federal government has not acted. This is a matter of local concern.
The Arkansas Supreme Court recently had occasion to undertake a preemption analysis under the "Federal Railroad Safety Act." In Missouri Pacific Ry. Co. v. Mackey, 297 Ark. 137, 760 S.W.2d 59 (1988), the Supreme Court held that A.C.A. § 23-12-201, which requires railroads to maintain their right of way by freeing the crossings of vegetation which would obstruct the views of motorists and pedestrians, was not preempted by the federal act. The court noted that although there were some federal regulations covering the removal of vegetation near the roadbed, they were aimed primarily at protection from fire hazards and were to prevent interference with the performance of railway employees' duties. Because the state statute in question was aimed at the protection of pedestrians and motorists, the court found no conflict and upheld the statute. This case is indicative of the Supreme Court's temperament on the issue, and it is my opinion, based upon this case, that the Supreme Court would take a similar view with respect to the statute in issue here. It is my opinion that a federal court would reach a similar conclusion.
It is thus my opinion, in light of all the authorities cited above, that A.C.A. § 23-12-305, in requiring railroads to construct "crossings" where a public road intersects the track, is not preempted by the "Federal Railroad Safety Act." It should be noted however, that23 U.S.C. § 130(b) provides that the Secretary of Transportation may set a percentage of the costs required to be paid by the railroad to "eliminate hazards" at railway-highway crossings. The percentage is not to exceed ten percent. It has been held that this provision means that a state law requiring railroads to share the costs of "elimination of hazards" at railroad crossings shall not apply to federal aid projects. Consolidated Rail v. Pennsylvania Public Utilities Commission, 557 A.2d 832 (Pa. 1989). It is arguable, however, whether requiring a railroad to construct a crossing is the same as requiring it to "eliminate a hazard."
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
* We understand the term "crossing" to include the alteration of the roadbed lying in and immediately around the railroad tracks in such a way as to render it passable by vehicles, but not necessarily including the crossing gates, lights or other warning devices.
** We have not been provided with information sufficient to determine why this procedure has not been followed in Mayflower, but we will note that to the extent the procedure is not being followed, an aggrieved party's remedy is to apply for a writ of mandamus to compel the local authorities to perform what appear to be their non-discretionary duties under A.C.A. § 23-12-305.
*** This provision has been construed as allowing only STATES, and not local governments to enact laws. See, Sisk, infra. The statute in question here, A.C.A. § 23-12-305, is a STATE law, which requires local authorities to enforce its provisions. This is not an instance where a municipality is attempting to exercise some legislative authority in the area of railroad safety. Section 23-12-305
represents a legislative action on the part of the STATE to require railroads to construct crossings where a public road crosses the tracks.
**** If, however, the location of a crossing in a particular place or in a particular manner would violate other federal regulations governing railroad SAFETY, the location of a particular crossing may be prohibited. This inquiry will require a case by case analysis of factual issues, and is thus not properly within the scope of an Attorney General opinion.