Thomas A. DONELON, Charles J. Eagan, Jr., et al., Plaintiffs-Appellants,

v.

NEW ORLEANS TERMINAL COMPANY and Federal Railroad Administration of the Department of Transportation, Defendants-Appellees.

No. 72–1546.

United States Court of Appeals, Fifth Circuit.

March 12, 1973.

Rehearing Denied April 4, 1973.

Nathan Greenberg, Roy Price, Parish Atty., Parish of Jefferson, Gretna, La., for plaintiffs-appellants.

Benjamin Slater, Walter J. Suthon, III, New Orleans, La., for New Orleans Terminal Co.

Gerald J. Gallinghouse, U. S. Atty., New Orleans, La., for Federal Railroad.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

This is an appeal from the granting of a federal injunction prohibiting plaintiffs-appellants, various officials of the Parish of Jefferson, Louisiana [hereinafter the Parish Officials], from proceeding with a state court suit in which they were attempting to obtain injunctive relief against the allegedly unsafe practices of defendant-appellee, the New Orleans Terminal Company [hereinafter the Railroad].[1] The Railroad filed a counterclaim in a related federal suit, which was also brought by the Parish Officials, and asked for a declaratory

---

1. The Federal Railroad Administration of the Department of Transportation was also named as a defendant in the principal federal suit but is only a nominal party on this appeal.

judgment that the Parish Officials were utterly without jurisdiction, power, or authority to prescribe, establish, or enforce standards and regulations for the maintenance and repair of the Railroad's roadbeds and tracks. The United States District Court granted the Railroad's motion for partial summary judgment as to the request for declaratory relief, certified that there was no just reason for delay in the entry of a final judgment regarding the partial summary judgment, *see* Rule 54(b), F.R.Civ.P., and issued a preliminary injunction against the Parish Officials pursuing their state court suit while the federal action continued. The only issues presently before us are (1) whether the granting of the partial summary judgment was proper, and (2) whether injunctive relief was appropriate in light of the Anti-Injunction Act, 28 U.S.C.A. § 2283. For the reasons stated herein, we affirm the trial court's holding on both points.

Although the procedural history of this controversy is unusually lengthy and complex, the importance of that history to our holding justifies our setting out the operative occurrences in some detail.

*August 4, 1970:* The Jefferson Parish Council was concerned about the fact that two train derailments had occurred within the parish in the space of thirty days. The Council met and passed a resolution to initiate legal action to correct the allegedly dangerous conditions of railroad tracks, roadbeds, and other facilities in the parish.

*October 16, 1970:* The Federal Railroad Safety Act of 1970, 45 U.S.A. §§ 421–441, became effective.

*October 27, 1970:* The Parish Officials filed suit in Louisiana state court seeking injunctive relief requiring "proper repair and maintenance" of the New Orleans Terminal Company's tracks and roadbeds and enjoining all use of the tracks until repaired.

*November 19, 1970:* The New Orleans Terminal Company removed the action to federal court pursuant to 28 U.S.C.A. § 1441.

*January 4, 1971:* The federal court remanded the action to the state court.

*January 15, 1971:* The Railroad petitioned the Secretary of Transportation to conduct an inquiry into the condition of the Railroad's trackage, roadbed, and other facilities in Jefferson Parish and to declare them to be in safe and proper condition. The Railroad alleged in its petition that the Federal Railroad Safety Act of 1970, particularly § 203 thereof, 45 U.S.C. § 432, conferred authority on the Secretary of Transportation to conduct such an inquiry and to issue the requested report. The Parish Officials filed exceptions with the Secretary of Transportation objecting to any investigation being held at the Railroad's request and urging that the petition be dismissed.

*January 21, 1971:* The Federal Railroad Administration of the Department of Transportation assumed jurisdiction of the controversy and conducted an inspection of the Railroad's facilities in Jefferson Parish.

*February 19, 1971:* The Railroad filed jurisdictional exceptions to the state court proceedings, alleging that federal jurisdiction was exclusive and that even under Louisiana law the Parish Officials were improper parties to bring such a suit.

*March 16, 1971:* The Federal Railroad Administration issued a report, F.R.A. Pet. No. 25 [hereinafter the Report], declaring that "this matter properly comes within the scope of the Federal Railroad Safety Act of 1970," setting forth detailed findings regarding the conditions of the Railroad's facilities in Jefferson Parish, and concluding that the trackage was properly maintained and was in a safe and suitable condition for daily operations.

*April 2, 1971:* The Parish Officials filed the instant suit in federal court. The petition was captioned "Petition for Review of an Order of an Administrative Agency of the United States," but it

named as defendants both the Federal Railroad Administration and the Railroad. The suit basically sought a determination that the Federal Railroad Administration had no jurisdiction to act as it did, that the Administration denied the Parish Officials due process of law by refusing to grant them an adversary hearing before issuing the Report, and that the Report was null and void.

*May 19, 1971:* The Railroad answered the federal petition and counterclaimed for a declaratory judgment that (1) the Parish Officials had no jurisdiction to prescribe or enforce rules and regulations relating to the safety of operations of a railroad operating in interstate commerce, and (2) the Report was valid and binding.

*October 16, 1971:* Pursuant to the statutory mandate of § 202(e) of the Federal Railroad Safety Act of 1970, 45 U.S.C. § 431(e), the Federal Railroad Administration adopted comprehensive federal "Track Safety Standards," 36 Fed.Reg. 20336–343, 49 C.F.R. § 213.1–213.241.

*November 5, 1971:* The Railroad filed a motion in the federal action for partial summary judgment. In essence, the Railroad asked for a judgment that the area of establishing and enforcing railroad track safety standards was totally preempted by federal law and that the Parish Officials were totally without jurisdiction, power, or authority to establish or enforce railroad safety standards.

*December 15, 1971:* The federal court granted the Railroad's motion for partial summary judgment. Shortly thereafter, the state court set a hearing date as to the Parish Officials' state suit for injunctive relief against the Railroad.

*January 21, 1972:* The Railroad returned to federal court and asked for a preliminary injunction enjoining the Parish Officials from proceeding with their state court suit. After certifying the partial summary judgment under Rule 54(b), F.R.Civ.P., the United States District Court entered an order that "[T]he granting of a preliminary injunction against the prosecution of [the state court] suit . . . is necessary to protect the jurisdiction of this Court and the Department of Transportation, and to protect and effectuate the [partial] judgment in favor of New Orleans Terminal Company. . . ." The court then issued the injunction restraining the Parish Officials from taking any further steps against the Railroad other than by continuing its suit for judicial review of the Report.

■ We note at the outset of our analysis that there are two distinctive features about this case. First, this is an appeal from only a partial summary judgment, which was made final, and therefore appealable, by a Rule 54(b) certification. The entire federal court case has not yet been finally decided below—the action for review of the Report of the Federal Railroad Administration is continuing to be litigated. Furthermore, the orders entered to date by the district court clearly indicate that the court intends to re-examine the injunction against the state court proceedings at the time a final judgment is entered regarding the review of that Report. Secondly, appellants' posture on this appeal is perhaps unique. Appellants sought to have the state court settle the controversy—they filed the original suit in state court, and when the Railroad removed it to federal court, appellants were successful in obtaining a remand back to the state court. Had the matter ended there, the federal court would not have become involved in the dispute, for a remand order is not reviewable.[2] But appellants were not content to leave the entire case in state court. Apparently fearing that the Railroad could successfully use the Federal Railroad Administration's Report as a "defense" to the state suit, appellants themselves invoked the jurisdiction of the federal court by

---

**2.** *See* Wright, Federal Courts § 41. The sole exception is where removal was sought under 28 U.S.C.A. § 1443. *See* 28 U.S.C.A. § 1447(d).

bringing suit to attack the Report. By naming the Railroad as a party defendant in that action, appellants called upon the federal court to resolve the differences between themselves and the Railroad. Their complaint is with the manner in which the federal court resolved the dispute they themselves asked it to resolve.

## I. THE PARTIAL SUMMARY JUDGMENT

■ The basic thesis underlying the district court's granting of the partial summary judgment is that a federal regulatory scheme has pre-empted the field of railroad safety to the exclusion of whatever interest in regulating railroad safety these individuals might otherwise have had outside the Act. We are in complete agreement with that conclusion, and we are fortified in reaching that result by the fact that we have a clear declaration of Congressional intent on that point to guide us:

"The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce."

45 U.S.C. § 434.

The meaning of the Congressional declaration is clear. The ultimate goal of the Act is to establish nationally uniform control of railroad safety, but the statute is not iron-clad. The Act specif-

ically authorizes a narrow spectrum of deviation from national uniformity, and the issue here is whether appellants' state court suit falls within one of the permissible exceptions.

■ The first statutory "exception," which appears in the second sentence of § 434, is clearly inapplicable. Regulations covering the precise subject matter of the state court suit have been enacted, 36 Fed.Reg. 20336–343, 49 C.F.R. § 213.1–213.241, and those regulations are comprehensive in scope and detail.

■ Nor can the second "exception," which appears in the final sentence of § 434, be said to envision this particular action. Three tests must be met if a state regulation is to be justified under the second "exception":

(1) the state regulation or standard relating to railroad safety is necessary to eliminate or reduce an essentially local safety hazard, *see* Washington v. Chicago, M., St. P. & P. RR., 1971, 79 Wash.2d 288, 484 P.2d 1146, appeal dismissed, 404 U.S. 804, 92 S.Ct. 108, 30 L. Ed.2d 36 (fire hazards along railroad rights-of-way);

(2) the local measure is not incompatible with any federal measure; and

(3) the local measure does not unduly burden interstate commerce.

We need not and do not decide whether those tests are here met, because in any event meeting those three conditions justifies only *State* action. This case is supported by United Gas Pipeline Co. v. Terrebonne Parish Police Jury, 1970, 319 F.Supp. 1138, aff'd, 5 Cir. 1971, 445 F.2d 301. That case concerned the Natural Gas Pipeline Safety Act of 1968, 49 U.S.C.A. § 1671–1684, which provided a similarly limited "exception" for *"Any state agency." Id.* § 1672(b). The Railroad Safety Act, however, speaks of an exception for "States," and we do not have before us an attempt by the State of Louisiana to regulate railroad safety; rather, we have before us individual officials of a parish government. Their

remedy against unsafe railroad practices must fit within the borders of the federal Act and the enumerated qualifications and exceptions thereto.

■ We do not purport to suggest at this time that the State of Louisiana, acting through its Attorney General, could not bring this same common-law suit to enjoin unsafe railroad practices. Nor do we intimate here that the Louisiana legislature, or some duly delegated agency acting for the State, could not establish standards under § 434's second exception. Lastly, we do not reach the issue of the extent to which the Act pre-empts State standards such as the common-law tests that appellants apparently seek to vindicate. *See* Napier v. Atlantic Coast Line RR., 1926, 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432. None of those issues are now before us, and we hold only that these individual officials are without authority under the Federal Railroad Safety Act of 1970 to require the Railroad to meet any safety standard beyond those provided for in the national Act.

## II.  THE TEMPORARY INJUNCTION AGAINST STATE COURT PROCEEDINGS

■ Having decided that the district court correctly entered a judgment that appellants are without power to require the Railroad to meet any non-federal safety standards, we must next determine whether it was appropriate for the United States District Court to issue an injunction against further state court proceedings. The Railroad urges that the preliminary injunction was proper under either of two exceptions to the Anti-Injunction Act, 28 U.S.C.A. § 2283, which provides as follows:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

First, the Railroad says that this injunction is needed in aid of the federal court's jurisdiction *and* to protect or effectuate its judgment. Secondly, the Railroad argues that the injunction is "expressly authorized by Act of Congress" in passing the federal pre-emptive legislation, citing Mitchum v. Foster, 1972, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705. Finding the first alternative to be applicable, we pretermit consideration of the second.

In Tampa Phosphate RR v. Seaboard Coast Line RR., 5 Cir. 1969, 418 F.2d 387, and Woods Exploration & Production Co. v. Aluminum Co. of America, 5 Cir. 1971, 438 F.2d 1286, this Court wrote at great length on the state of the law regarding federal court injunctions against state court proceedings. In the latter case we thought that we had "at last reached the end of our long and protracted journey through the Appling Field and points beyond," 438 F.2d at 1316, but the importance of the issue justifies a few additional words.

■ The Anti-Injunction Act expressly excepts stays necessary in aid of the court's jurisdiction or needed to protect or effectuate its judgments. Here, both precepts appear, for the United States District Court still has before it part of the controversy between these parties—the judicial review of the Report—and the court has already finalized a judgment pursuant to Rule 54(b) as to part of the controversy. In effect, the court below has by final judgment held that the Railroad cannot properly be subjected to the efforts of these individual local officials to impose some safety standard that lies outside of the Federal Railroad Safety Act of 1970. That part of the action is concluded and certainly rises to the level of *res judicata* effect that was our central concern in Woods Exploration & Production Co. v. Aluminum Co. of America, *supra*. We find that the *Woods Exploration* and *Tampa Phosphate RR*. cases control and we hold that this injunction was proper.

Those two cases are so directly in point that it would serve little purpose to quote from them at length; instead, we merely reiterate that a federal court may enjoin a state proceeding that is precluded under the doctrine of *res judicata*. While § 2283 was designed to ensure the state courts' adjudicative potency, its exceptions assure that the federal courts and their judgments will not be eunuchized and that their muscularity will not be atrophied.

Although the character of the person *filing* the federal action does not control the issue, we cannot ignore the fact that here it was the Parish Officials themselves who invoked the jurisdiction of the federal court. This is not a case of parties racing to the courthouse or racing to judgment, nor is this a case of parties suing each other in separate state and federal courts and then encouraging jealous cross-fire between the courts. None of those factors being present, many of the thorny considerations usually involved in these injunction cases are not even raised. Appellants themselves issued the invitations to dance in the federal ballroom, they chose their dancing partners, and at their own request they were assigned a federal judge as their choreographer. Now that the dance is over, appellants find themselves unhappy with the judging of the contest. They urge us to reverse and declare that "Good Night Ladies" should have been played without the partial summary judgment having been granted and without the preliminary injunction having been issued. This we have declined to do, and in so doing we note that this is not The Last Tango for the Parish. Appellants still have an encore to perform and their day in court is not yet over. Their attack on the Report issued by the Federal Railroad Administration has yet to be decided. The Railroad Safety Act makes clear, however, that seeking judicial review of the Report's determination that the Railroad meets all applicable standards is the only remedy even arguably available to these particular in-

dividuals. See 45 U.S.C. § 432. The *State* may participate in regulating railroad safety under the Act, *see* 45 U.S.C. §§ 435, 436, 439(a), but this case does not involve the State itself. Here we have individuals, representing a parish, waltzing into two courts simultaneously.

The trial court's holding that the Act is pre-emptive is correct. No attempt to regulate the safety of interstate railroads may be made unless the Act itself authorizes or allows the regulation. We hold that the court below properly rendered judgment that the Railroad could not be forced to participate in this state court cotillion, which was not brought by the State and which sought to impose safety measures that were not contemplated by the Act, and that the federal court, under the facts of this case, was the sole director of the terpsichorean exhibition and had the right to effectuate and protect its directional decisions. The adjudication having gravitated to the federal forum, appellants' attempt to repeal that law is unavailing.

Affirmed.