**CSX TRANSPORTATION, INC., Plaintiff,**

**v.**

**CITY OF TULLAHOMA, TENNESSEE, Defendant.**

**No. Civ. 4–87–47.**

United States District Court, E.D. Tennessee, Winchester Division.

Feb. 17, 1988.

Gareth S. Aden, Harris, Robinson & Aden, Nashville, Tenn., Sally J. Kircher, CSX Transp., Inc., Jacksonville, Fla., and Earl R. Layman, Knoxville, Tenn., for plaintiff.

Steve Worsham, Tullahoma, Tenn., for defendant.

## MEMORANDUM OPINION

JARVIS, District Judge.

This is an action seeking declaratory relief brought pursuant to 28 U.S.C. § 1331. Plaintiff, CSX Transportation, Inc. ("CSX"), seeks a declaration that Ordinance # 19-35 of the *Tullahoma City Code* is void as unconstitutional. The municipal ordinance in question limits the speed of trains passing through the City of Tullahoma to 25 m.p.h. Plaintiff contends that this ordinance is preempted by § 205 of the Federal Railroad Safety Act of 1970 ("FRSA"), 45 U.S.C. § 434, and therefore violates the supremacy clause of the United States Constitution, Article VI, cl. 2. In the alternative, plaintiff contends that the ordinance violates the commerce clause, Article I, § 8, cl. 3.

Currently pending is defendant's summary judgment motion on the question of federal preemption. In addition, CSX has filed a motion to allow the operation of trains through Tullahoma at speeds of up to 50 m.p.h. pending hearing of the summary judgment motion. The City of Tullahoma has filed a motion to stay any ruling on the summary judgment motion pending completion of discovery and to abstain from acting in this matter until a pending hearing on whether the conditions in Tullahoma present an "essentially local safety hazard" is held by the State of Tennessee's Department of Public Service. Since, as indicated below, the court is of the opinion that this case may be resolved at this time by resolving a question of law, CSX's motion for injunctive relief pending a hearing on the motion for summary judgment [Court File # 18] is DENIED AS MOOT. Likewise, since this matter can be resolved by the resolution of a single legal question involving federal law, the City of Tullahoma's motion to stay the hearing of this matter and abstain from acting in this case [Court File # 21] is DENIED.

Argument was heard on all pending motions before the undersigned on February 10, 1988. The State of Tennessee moved to and was permitted to appear *amicus curiae* and present its position in support of the City of Tullahoma.

### I. *Federal Preemption*

The supremacy clause of the United States Constitution establishes that when federal law conflicts with state or local law, the federal law must control. Article VI, cl. 2. The single issue around which this case revolves is whether the City of Tullahoma's municipal ordinance limiting trains to a 25 m.p.h. speed limit through the City is preempted by the FRSA and is therefore violative of the supremacy clause. It is purely a question of law.

Since the early 20th Century, the City of Tullahoma has had in effect a municipal ordinance limiting the speed of trains through the City to 25 m.p.h. In 1970, Congress passed the Federal Railroad Safety Act (the "Act"). There is no question that in creating the act Congress intended to provide for the creation of uniform, national safety standards for regulation of the railroad industry:

[T]he railroad industry has very local characteristics. Rather, in terms of its operations, it has a truly interstate character calling for a uniform body of regulation and enforcement

.     .     .     .     .

H.R.Rep. No. 91-1194, 91st Cong., 2d. Sess., reprinted in [1970] U.S.Code Cong. & Ad.News, 4104, 4110. To carry out this goal of uniformity, Congress included in the Act an express provision regarding preemption:

The Congress declares that laws, rules, regulations, orders and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue to enforce any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule,

regulation, order, or standard covering the subject matter of such state requirement. A state may adopt or continue to enforce an additional or more stringent law, rule, regulation, order or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order or standard, and when not creating an undue burden on interstate commerce.

45 U.S.C. § 434.

The language of § 434 makes it clear that the Congress intended to preempt state laws and regulations dealing with railway safety subject to two exceptions. The first exception is that a state may continue to enforce any "law, rule, regulation, order, or standard" until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of the state's requirement. In the matter of railway speed, the Secretary of Transportation, acting through the Federal Railroad Administration, has enacted such regulations. *See* 49 C.F.R. Part 213.9 (establishing maximum speeds for passenger and freight trains for six different classifications of track); 213.57 (establishing maximum speeds for trains traveling on curved track).[1]

■ The second exception provides that more stringent state regulations may be adopted or continued in force even where federal regulations govern the same subject, if three criteria have been met:

(1) The regulation is necessary to eliminate or reduce an essentially local safety hazard;

(2) The regulation is not incompatible with any federal regulation; and

(3) The regulation does not create an undue burden on interstate commerce.

*See Donelon v. New Orleans Terminal Company,* 474 F.2d 1108 (5th Cir.1973).

Within the last two years, CSX and the City of Tullahoma have attempted to work out a compromise between the 25 m.p.h. municipal ordinance and the 60 m.p.h. federal regulation. The failure to reach such a compromise has resulted in this lawsuit.

The City contends that because of the conditions in Tullahoma, railroad speeds greater than 25 m.p.h. create "an essentially local safety hazard" which may be the subject of regulation by the City. The railroad argues that the exception provides only for regulation by "states" and not for regulation by municipal ordinance. Courts which have considered this issue have unanimously agreed with the railroad's position. *See, e.g., Donelon v. New Orleans Terminal Company,* 474 F.2d 1108 (5th Cir.), *cert. denied,* 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973); *The Baltimore and Ohio Railroad Company v. City of Piqua,* Case No. C–3–85–312, (S.D. Ohio, June 30, 1986) [1986 WL 8254]; *Lara v. National Railroad Passenger Corp.,* Case No. H–85–697 (N.D. Ind., May 27, 1986) [1986 WL 15725]; *Johnson v. Southern Railway Company and City of Charlotte,* 654 F.Supp. 121 (W.D.N.C.1987); *Sisk, et al., v. National Railroad Passenger Corporation,* 647 F.Supp. 861 (D.C.Kan.1986). This court is in agreement with the above-cited cases that § 205 of the FRSA does not permit an exception to preemption where a municipality acts by ordinance to regulate an "essentially local" railroad safety hazard. The plain language of the statute itself indicates that it applies only to states. It refers to state regulations by "law, rule, regulation, order, or standard" —it makes no reference to "ordinances", the method by which municipalities normally act. Nothing in the legislative history indicates that the exception covered actions by municipal ordinance. Moreover, the court is mindful that Congress has shown concern with subjecting the railroads to conflicting safety requirements in 50 different state jurisdictions. Certainly, Congress would be particularly concerned if the railroads were subject to differing reg-

---

**1.** The Department of Transportation regulations for freight trains provide various speed limits, depending upon the condition of the track, that range from 10 to 110 m.p.h. The track through Tullahoma is, under the Secretary's regulations, classified as Class 4 track which carries a 60 m.p.h. speed limit.

ulations in every municipality in the United States. The court is in agreement with the above-cited authorities that the "essentially local safety hazard" exception found in 45 U.S.C. § 434 does not apply to actions taken by municipalities.

Accordingly, the court finds that Tullahoma City Ordinance No. 19–35 is preempted by the Federal Railroad Safety Act, 45 U.S.C. § 434, and is therefore void under the supremacy clause of the United States Constitution, Article VI, clause 2.

CSX has asked this court to find as a matter of law that train speeds while in municipalities and grade crossings there are not "essentially local" within the meaning of § 205. Upon review of § 205, the court is of the opinion that the question which CSX asks the court to resolve is a factual question which Congress has left for state regulatory agencies. In Tennessee, the appropriate agency to make the decision of whether or not the conditions existing in Tullahoma present an "essentially local safety hazard" is the Public Service Commission, not this court. It may be that at some point a federal court will be required to resolve the question of whether such an action by the Tennessee Public Service Commission would be preempted by federal law. However, at this point, that question has not been presented to this court and is obviously not ripe for adjudication. Accordingly, this court makes no finding regarding whether or not the conditions in Tullahoma present an "essentially local safety hazard" or, if the Tennessee Public Service Commission should so find, whether that determination would be preempted by federal law.

## II. *Abstention*

■ Alternatively, the City of Tullahoma argues, and the State of Tennessee concurs, that this court should abstain from hearing this case until Tullahoma's petition before the Public Service Commission has been heard. In October, 1987, the petition was filed and apparently requests the State Department of Public Service to make a ruling that train speeds in excess of 25 m.p.h., at least in areas of Tullahoma, present an "essentially local safety haz-

ard." The parties agree that the Public Service Commission is the appropriate state agency to hear such claims. The City raises the abstention doctrine established under *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), under which a district court should abstain from deciding a case where state action is being challenged in federal court as contrary to the federal constitution and there are pending questions of state law in that state which may be dispositive of the case. This is not an appropriate case for *Pullman* abstention. This is not a situation where state action is being challenged in federal court as contrary to the federal constitution and there are questions of state law that may be dispositive of the case. Rather, the sole dispositive issue in this case is whether the municipal ordinance in question is preempted by federal law. The court has no question that it is preempted. No matter what the Tennessee Public Service Commission does with Tullahoma's petition, the Tullahoma ordinance is unconstitutional.

Plaintiff also contends that *Burford* abstention would be appropriate in this case. In *Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), the Supreme Court upheld abstention on grounds of comity to avoid needless conflict with a state's administration of its own affairs. Abstention is not necessary in the instant case since the court has no intention of interfering with the affairs of the State of Tennessee. Rather, in dismissing this action, defendant will be left to its remedy of pursuing the petition with the Public Service Commission to have that Commission determine whether areas in the City of Tullahoma present "essentially local safety hazards".

In seeking abstention, the defendant is in essence seeking injunctive relief to permit it to maintain its 25 m.p.h. speed limit until the Public Service Commission acts. In other words, defendant seeks, at least temporarily, an order maintaining a constitutionally void statute. The court cannot provide such relief.

## III. *Defendants' Counter-Claims*

The defendant has raised four counter-claims in this action. They are set out in the counter-complaint as follows:

(1) The City is entitled to a declaration that its train speed ordinance is not in conflict with 45 U.S.C. § 434 and is therefore not preempted;

(2) That, in the alternative, plaintiff should be enjoined from increasing speeds above 25 m.p.h. until the Tennessee Public Service Commission makes a determination on the issue of "an essentially local safety hazard" and until all avenues of administrative and judicial review of that determination have been exhausted;

(3) That the railroad has failed to keep in repair road crossings at the railroad sites in conformity with T.C.A. § 65–11–103; and

(4) That the court should enjoin the plaintiff from increasing train speeds above 25 m.p.h. until the State of Tennessee certifies a federal-state warning signal improvement program for the City of Tullahoma.

In reviewing the counter-claim, it is apparent that the relief sought in the first, second and fourth counter-claims is barred by federal preemption under § 205. Again, the relief sought in those counter-claims is injunctive relief to enforce an unconstitutional municipal ordinance.

The relief sought in the third counter-claim relates to the City's claim that the situation with the railroad in Tullahoma presents an "essentially local safety hazard". These claims should properly be brought before the Public Service Commission and this is an appropriate case for the application of *Burford* abstention since it seeks to involve the court in a complicated regulatory determination of local law. *See Burford,* 319 U.S. 315, 63 S.Ct. 1098.

## IV. *The City's Claim That It's Ordinance Addresses Environmental Concerns*

■ Finally, Tullahoma's first counter-claim makes the argument that its ordinance is not in conflict with § 205 because the ordinance addresses serious local environmental conditions not contemplated by federal statute and regulations. There is no merit in this argument. The 1974 Congress enacted the Hazardous Material Transportation Act (HMTA) which also contains a preemptive section preempting any requirement, of any state or political subdivision thereof, "which is inconsistent with any requirement set forth in this title, or in any regulation issued under this title". 49 U.S.C.App. § 1811(a). Transportation of hazardous materials is regulated by the Secretary of Transportation under both the HMTA and the FRSA. Although the preemption standard is somewhat different under the two acts, under the FRSA, state action is preempted when the Secretary has issued orders or regulations covering the field. Preemption is not limited to those regulations promulgated under the FRSA, but refer instead to any other rule, regulation, order, or standard covering the subject matter and adopted by the Secretary. *See, Atchison, T. & S.F. Ry. Co. v. Illinois Commerce Commission,* 453 F.Supp. 920, 924 (N.D. Ill.1977). Obviously, there is some overlapping preemption in this area. Whether the City of Tullahoma describes its ordinance as intended to regulate railroad safety or to regulate the handling of hazardous materials, it is nevertheless preempted by 45 U.S.C. § 434.

## V. *Conclusion*

In light of the foregoing, plaintiff's motion for summary judgment will be granted, and the court finds that § 19–35 of the Tullahoma City Code is void as it is preempted by the Federal Railroad Safety Act, 45 U.S.C. § 421, *et seq.* The counter-claims of the City of Tullahoma are dismissed. The City of Tullahoma's motion to stay or abstain from hearing this matter [Court File # 21] is denied. Plaintiff's motion for injunctive relief [Court File # 18] is denied as moot.

Order accordingly.