Ronald L. LANDRUM, Individually and as Father and Next Friend of Rachea Baugh Landrum, a Minor and as Stepfather and Next Friend of Buddy Glenn Oas, Jr., a Minor and as Administrator of the Estates of Debra Lynn Landrum, Kathryn Lynn Landrum & Ronald Adam Landrum, Plaintiffs,

v.

NORFOLK SOUTHERN CORPORATION and The Alabama Great Southern Railroad Company, Defendants.

Civ. A. No. 2:92cv71PN.

United States District Court, S.D. Mississippi, Hattiesburg Division.

July 12, 1993.

Norman W. Pauli, Jr., Hattiesburg, MS, Gothard J. Reck and Hugh C. Uhalt, New Orleans, LA, for plaintiffs.

Brooke Ferris, III and Romney H. Entrekin, Laurel, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

PICKERING, District Judge.

This matter is before the Court on the Defendants' Motion for Partial Summary Judgment. The Court, having reviewed the briefs of the parties, the authorities cited, and being otherwise fully advised in the premises, finds as follows, to-wit;

### I. FACTUAL BACKGROUND

On the morning of February 11, 1992, a fatal collision involving a motor vehicle operated by the Plaintiffs' decedent and The Alabama Great Southern Railroad Company Train No. 221 occurred at the intersection of Doncurt Road in Jones County, Mississippi and the main line of The Alabama Great Southern Railroad Company. Debra Lynn Landrum, Kathryn Lynn Landrum, and Ronald Adam Landrum died as a result of injuries received in this accident. The Plaintiffs, the decedent Debra Lynn Landrum's husband and two minor children, brought a negligence action against the Defendants seeking wrongful death damages. The Defendant, Norfolk Southern Corporation, is a Virginia corporation. The Defendant, The Alabama Great Southern Railroad Company, is an Alabama corporation, which is qualified to do business in the State of Mississippi.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis* 799 F.2d 218, 222 (5th Cir.1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality' only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Co. v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light more favorable to the non-moving party. *McPherson v. Rankin,* 736 F.2d 175, 178 (5th Cir.1984).

The moving party has the duty to demonstrate the lack of genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat'l Leasing v. Woods,* 687 F.2d 117 (5th Cir.1982). Once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111, 114 (5th Cir.1978). In other words, the "nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In re Municipal Bond Reporting Antitrust Litig.,* 672 F.2d 436 (5th Cir.1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see also Union Planters Nat'l Leasing v. Woods,* 687 F.2d at 119.

## III. LEGAL ARGUMENT

■ The Defendants contend that they are entitled to partial summary judgment as a matter of law in that the local speed ordinance enacted in Laurel, Mississippi is preempted by federal law. *See CSX Transp., Inc. v. Easterwood,* —— U.S. ——, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993).

The Plaintiffs contend that federal preemption does not apply to the facts of this case since the local speed ordinance was enacted by the City of Laurel pursuant to the savings clause of 45 U.S.C. § 434, which preserves to the states the right to adopt more stringent laws relating to "railroad safety when necessary to eliminate or reduce an essentially local safety hazard." 45 U.S.C. § 434 (emphasis added). The Plaintiffs argue that the decision in *Easterwood, supra,* does not apply to the facts of this case since the *Easterwood* decision was based on general common law and not statutory law; the Plaintiffs point out that the Plaintiff in *Easterwood* did not claim that the train speed was in violation of a specific statute which had been passed by a community to eliminate a local safety hazard. *Easterwood,* —— U.S. at ——, 113 S.Ct. at 1743.

The case at hand is controlled by the Federal Railroad Safety Act ("FRSA"), which was adopted by Congress in 1970 "to pro-

mote safety in all areas of railroad operations and to reduce railroad-related accidents, and to reduce deaths and injuries to persons...." 45 U.S.C. § 421. Although the FRSA, pursuant to 45 U.S.C. § 431(a), gives the Secretary of Transportation broad powers to "prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety ...," the FRSA, through the savings clause found in 45 U.S.C. § 434, also allows a state to "adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement." Even after federal law has been enacted, the savings clause permits a state to adopt or continue a more stringent law, rule, regulation, order, or standard "relating to railroad safety when necessary to *eliminate or reduce an essentially local safety hazard,*" if it is "not incompatible with any Federal law, rule, regulation, order, or standard...." 45 U.S.C. § 434 (emphasis added). In 1971, maximum train speed regulations were promulgated by the Secretary, acting through the Federal Railroad Administration ("FRA"). 49 C.F.R. § 213.9. The Defendants contend that according to the track classification system required by federal law, the mainline track at Doncurt Road is designated as Class 4 track, which is not denied by the Plaintiffs. Therefore, pursuant to the provisions of 49 C.F.R. § 213, et seq., freight trains operating on Class 4 track may not travel at speeds which exceed 60 miles per hour. However, the City of Laurel, Mississippi has set a maximum speed limit of 40 miles per hour for trains traveling on any track within its city limits. *See* Laurel City Ordinance 23–1. This ordinance was adopted on July 20, 1982 and became effective August 20, 1982.

Pursuant to the Supremacy Clause of the United States Constitution a state statute must yield to a federal statute when a state statute conflicts with a federal statute. *See* U.S. Const., Art. VI, cl. 2. Nevertheless, the United States Supreme Court has held that "pre-emption will not lie unless it is 'the clear and manifest purpose of Congress.'" *Easterwood,* —— U.S. at ——, 113 S.Ct. at 1737

(quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). In deciding whether the FRSA preempts state common law, the United States Supreme Court held in *Easterwood, supra,* that "under the Federal Railroad Safety Act, federal regulations adopted by the Secretary of Transportation pre-empt" common-law speed restrictions. *Id.* —— U.S. at ——, 113 S.Ct. at 1744. The Court also stated "[u]nderstood in the context of the overall structure of the regulations, the speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation of the sort which respondent seeks to impose on petitioner." *Id.* —— U.S. at ——, 113 S.Ct. at 1742. Thus, *Easterwood* held that the issue of speed was pre-empted.

The Plaintiffs attempt to distinguish the *Easterwood* decision from the case at bar by pointing out that the *Easterwood* case involved Georgia common law relating to the speed of trains; that is trains should not be operated at a speed greater than what is reasonable and safe under the circumstances. Plaintiffs further point out that the present case does not involve general common law principles, but rather involves a specific local ordinance. In view of the specific language of § 434 and the holding in *Easterwood,* this Court concludes that *Easterwood* is nevertheless controlling. In order for the city ordinance to survive under the savings clause, it would have to be an ordinance that was adopted or continued to "eliminate or reduce an essentially local safety hazard." In the opinion of this Court, such an ordinance would have to apply to specific crossings and not to all crossings within a town. In other words, the governing body would have to take into consideration specific hazards at a given crossing and use that as the basis for a more stringent ordinance or statute. Based upon the decision in *Easterwood,* the Court concludes that the city ordinance of Laurel does not survive through the savings clause of § 434.

The Court would further point out that the language of 45 U.S.C. § 434 specifically provides that *states* are allowed to enact statutes to reduce or eliminate a local safety hazard. *See Missouri Pacific R.R. Co. v. Railroad*

*Comm'n of Texas,* 671 F.Supp. 466 (W.D.Tex. 1987), *aff'd,* 850 F.2d 264 (1988). The Fifth Circuit in *Donelon v. New Orleans Terminal Co.,* 474 F.2d 1108, 1112 (5th Cir.1973) held that "[t]he Railroad Safety Act ... speaks of an exception for 'States'. ..." and not for local entities such as parishes. Therefore, based on the Fifth Circuit's ruling in *Donelon,* this Court feels that cities as well as parishes likely do not qualify as a "state" under the savings clause. *See Donelon v. New Orleans Terminal Co.,* 474 F.2d 1108 (5th Cir.1973; *see also Southern Pacific Transp. Vo. v. Town of Baldwin,* 685 F.Supp. 601 (W.D.La.1987). However, the decision in this case is based upon the fact that the Laurel city ordinance was not adopted to "eliminate or reduce an essentially local safety hazard." Although this Court is bound to follow *Donelon* and if it had concluded that the Laurel city ordinance was adopted "to eliminate or reduce an essentially local safety hazard" nevertheless, it would have to apply *Donelon.* This Court sees extreme problems in applying *Donelon.* While the United States Constitution provides that the states retain all powers not delegated to the federal government, the same is not true in the states. The municipalities of Mississippi only exercise such authority as they are given by the State of Mississippi. They have no authority not conferred upon them by the state. Consequently, this Court is of the opinion that action by a municipality should be viewed as action by the state. The Mississippi Legislature does not consider hazards at the various crossings scattered throughout the state and pass legislation accordingly. It would be virtually impossible for the Legislature to do so. This is something that in practice, and in common sense, must be handled by local authorities. They are the ones that pass over these crossings daily, have knowledge of the accidents that happen at these crossings, and are in the best position to make an intelligent decision as to whether there is a specific hazard at a given location. To the knowledge of this Court, the Legislature has never attempted to make any individual assessment of the special hazards at any individual crossing. Nevertheless, even if this Court found that this ordinance was adopted because it was "necessary to eliminate or reduce an essentially local safety hazard" it would have to apply *Donelon.* The Defendants are entitled to partial summary judgment as a matter of law on the issue of speed pre-emption.

■ The Defendants also contend they are entitled to summary judgment as a matter of law in that the Plaintiffs' state law claim for the failure to provide additional warning devices at the Doncurt crossing is pre-empted by federal law. More specifically, the Defendants argue Congress, by enacting the provisions of Intermodal Surface Transportation Efficiency Act ("ISTEA"), and by requiring the noted changes to the Manual of Uniform Traffic Control Devices ("MUTCD"), expressed its intent to give more authority in the area of crossing safety to the governmental entity with jurisdiction over the crossing. Thus, the Defendants contend when the Jones County Board of Supervisors made the decision to install and maintain stop signs at the Doncurt Road crossing, a federal decision was reached through the local governmental entity regarding the appropriate level of protection for the Doncurt Road crossing. This is contrary to the holding of *Easterwood.* Consequently, the Defendants' argument in regard to the warning devices is not well taken.

It is ironic that the Defendants contend that a local governmental body could perform action that would provide federal pre-emption in view of *Donelon,* but could not take action under the savings clause. In other words, argument is made that the action of a local governing body can constitute federal action but not state action. Stated otherwise, action of a local governing body can be used as a defensive shield but not as an affirmative cause of action. Nevertheless, that is not the basis of decision in this case.

The Court finds, based on the ruling in *Easterwood, supra,* that federal law does not pre-empt Plaintiffs' state law claim for failure to provide additional warning devices at the Doncurt crossing. As stated in the *Easterwood* decision, "the MUTCD provides a description of, rather than a prescription for, the allocation of responsibility for grade crossing safety between the Federal and State Governments and between States and

railroads." *Easterwood,* —— U.S. at ——, 113 S.Ct. at 1741. The MUTCD explicitly states: "It is the intent that the provisions of this Manual be standards for traffic control devices installation, but not a legal requirement for installation." MUTCD at 1A–4. "Likewise, the requirement that the States comply with the MUTCD does not cover the subject matter of the tort law of grade crossings." *Easterwood,* —— U.S. at ——, 113 S.Ct. at 1740. The Court stated "[j]urisdiction over railroad-highway crossings resides almost exclusively in the States." *Id.* —— U.S. at ——, 113 S.Ct. at 1740. The Court further noted "[a]nd contrary to the view of the Court of Appeals for the Tenth Circuit, it does not necessarily follow that '[t]he hit-or-miss common law method runs counter to a statutory scheme of planned prioritization.'" *Id.* —— U.S. at ——, 113 S.Ct. at 1739 (quoting *Hatfield v. Burlington Northern R. Co.,* 958 F.2d 320, 324 (1992)). "In fact, the scheme of negligence liability could just as easily complement these regulations by encouraging railroads-the entities arguably most familiar with crossing conditions-to provide current and complete information to the state agency responsible for determining priorities for improvement projects in accordance with § 924.9." *Id.* In view of the fact that pre-emption does not apply unless it is "the clear and manifest purpose of Congress" the Supreme Court concluded, as to the warning signals at that grade crossing "we are not prepared to find pre-emption solely on the strength of the general mandates of 23 C.F.R. Pt. 924." *Id.* —— U.S. at —— and ——, 113 S.Ct. at 1738, 1740.

However, in *Easterwood,* the Court recognized that at crossings where federal funds have been expended, certain requirements for design and installation of the crossing equipment was a condition of obtaining such funds. *Id.* —— U.S. at —— – ——, 113 S.Ct. at 1739–41. One of the requirements of receiving the federal funds was that the state would comply with certain regulations concerning the installation of automatic gates with flashing light signals or obtain the approval of FHWA if such devices were not installed. *Id.* Under the above regulations, codified as 23 C.F.R. §§ 646.214(b)(3) and (4), the Supreme Court held that the use of federal funds to upgrade a crossing caused the pre-emption of state tort law in regard to traffic control devices at such crossings. *Id.* —— U.S. at ——, 113 S.Ct. at 1741. There is no indication before this Court that any federal funds have been involved in improving this crossing. Therefore, federal pre-emption does not apply to the claim based upon inadequate crossing signals. The Defendants' Motion for Partial Summary Judgment as to this issue should be and is hereby denied.

A separate judgment will be entered herein in accordance with Fed.R.Civ.P. 58.

SO ORDERED AND ADJUDGED.

## *JUDGMENT*

This day this cause came on for hearing before the Court on the Defendants' Motion for Partial Summary Judgment, the issues having been duly heard and a decision having been duly rendered:

It is Ordered and Adjudged:

That the Motion for Summary Judgment is GRANTED in part and DENIED in part. The Complaint filed by the Plaintiffs is dismissed with prejudice as to the issue of speed pre-emption.

SO ORDERED AND ADJUDGED.