The Honorable Edward W. Pugh State Senator, 1st District 625 Lincoln Avenue Wamego, Kansas 66547
Dear Senator Pugh:
You inquire whether a city or county can enact legislation that imposes speed restrictions on trains traveling within the municipality's boundaries and whether municipalities can impose restrictions on the amount of time that trains may obstruct traffic.
Our research has detected no Kansas statutory authority that would affect a county's ability to use its home rule power[1] to enact a resolution restricting train speeds provided that such resolution did not conflict with federal law. Unlike counties, however, K.S.A. 1999 Supp.12-1633 and 15-438 authorize cities to regulate certain aspects of railroads. K.S.A. 1999 Supp. 12-1633 provides:
 "The governing bodies of cities of the first and second class shall have the power to regulate the crossings of railway and street-railway tracks and provide precautions and adopt ordinances regulating the same; to regulate the running of street railways or cars and to adopt ordinances relating thereto and to govern the speed thereof; to regulate the running of railway engines and cars, except speed, and to adopt ordinances relating thereto; and to make other and further provisions, rules and regulations to prevent accidents at crossings and on tracks of railways. . . ."
 "From and after the effective date of this act [1988] that part or parts of any rule, regulation or ordinance adopted pursuant to this section regulating the speed of railway engines and cars shall not be of any force or effect, and that part or parts shall be and are hereby declared null and void." (Emphasis added.)
K.S.A. 1999 Supp. 15-438 applies to cities of the third class:
 "The council shall have power to . . . provide for the passage of railways through the streets . . . also to regulate the crossings of railway tracks . . . to regulate the running of railway engines and cars, except speed, and to adopt ordinances relating thereto; and to make any other and further provisions, rules and restrictions to prevent accidents at crossings and on the tracks of railways . . . ."
 "On and after the effective date of this act [1988] that part or parts of any rule, regulation or ordinance adopted pursuant to this section regulating the speed of railway engines and cars shall not be of any force or effect, and that part or parts shall be and are hereby declared null and void." (Emphasis added).[2]
Clearly, these statutes do not allow cities to regulate the speed of "railway engines and cars." However, because K.S.A. 1999 Supp.12-1633 and 15-438 do not uniformly apply to all cities,[3] a city can charter out of the applicable statute and enact an ordinance that regulates train speed, provided that such charter ordinance does not run afoul of federal law.[4]
In Sisk v. National Railroad Passenger Corp.,[5] the United States District Court for the District of Kansas concluded that a city ordinance limiting the speed of trains was preempted by the Federal Railroad Safety Act of 1970.[6] Seven years after the Sisk decision, the United States Supreme Court opined that federal regulations establishing maximum train speeds preempt state regulation of train speed limits.[7]
The Federal Railroad Safety Act of 1970 (FRSA) was replaced by the Federal Railway Safety Authorization Act of 1994 (FRSAA),[8] the purpose of which is to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents."[9] Like its predecessor, the FRSAA provides that "laws, regulations, and orders related to railroad safety shall be nationally uniform to the extent practicable."[10] In Burlington Northern and Santa Fe Railway Companyv. City of Sedgwick, Kansas,[11] the United States District Court for the District of Kansas invalidated a city ordinance imposing a train speed limit of 30 miles per hour because the ordinance was preempted by federal regulations governing train speed limits. In addition to Sisk andCity of Sedgwick, Kansas, there are numerous cases from other jurisdictions that conclude that local legislation limiting train speeds are preempted by federal law.[12]
As far as the legality of local legislation limiting the length of time that a train can block a city street, K.S.A. 66-273 provides, in part:
 "Each and every railroad company . . . is hereby prohibited from allowing its trains, engines or cars to stand upon any public road within one half mile of any incorporated or unincorporated city or town . . . or upon any crossing or street, to exceed ten minutes at any one time without leaving an opening in the traveled portion of the public road, street or crossing of at least thirty feet in width."
Violation of this statute, enacted in 1923, is a misdemeanor and punishable by a fine.[13] In Walker v. Missouri Pac. Ry. Co.,[14] the Kansas Supreme Court concluded that K.S.A. 66-273 does not restrict a city's ability to enact a more restrictive ordinance that prohibits a railroad company from blocking a street for more than five minutes.[15]
However, it is our opinion that local legislation that imposes time limits on trains obstructing traffic is vulnerable to attack on the same grounds as ordinances regulating train speed. In CSX Transportation,Inc. v. City of Plymouth, Michigan,[16] the 6th Circuit Court of Appeals concluded that an ordinance prohibiting more than a five minute obstruction of street traffic is related to railroad safety and, therefore, is preempted by the Federal Railway Safety Act:
 "The FRSA preempts municipal `laws, regulations, orders, and standards related to railroad safety.' (citation omitted.) [The] Plymouth ordinance does not, on its face, make `reference to' railroad safety. Plymouth contends that this ordinance is not preempted because it was enacted to promote the general welfare of its residents, and was not directed towards and does not regulate any aspect of `railroad safety.' Neither that purpose nor the lack of a reference to railroad safety precludes a finding that the ordinance is `related to' railroad safety because the ordinance has a connection with railroad safety. [In] determining whether the Plymouth ordinance has a `connection with' and is thus related to railroad safety, this court must necessarily look at the terms of the ordinance and what the ordinance requires in terms of compliance. [It] is on the basis of potential safety aspects of compliance with the ordinance that the challenged ordinance relates to railroad safety. Taking the evidence in the light most favorable to Plymouth, it appears that compliance with the challenged ordinance would require shorter or faster trains. [As] the Plymouth ordinance is `related to railroad safety,' it is expressly preempted by the FRSA."[17]
Additionally, such local legislation may also violate the Commerce Clause of the United States Constitution.[18] In Kahn v. Southern Ry.Co.,[19] the 4th Circuit Court of Appeals opined that an ordinance prohibiting a train from obstructing traffic for three minutes violates the Commerce Clause because "the ultimate result would be to unduly shorten trains and thereby impede the free flow of commerce between the states."[20] However, there are at least two state appellate courts that have concluded that such regulation does not violate the Commerce Clause.[21]
Summarizing, it is our opinion that local legislation that imposes speed restrictions on trains is preempted by the Federal Railway Safety Authorization Act of 1994. Depending on its terms, local legislation that imposes time restrictions on trains obstructing traffic may offend the Commerce Clause to the United States Constitution and may be preempted by the Federal Railway Safety Authorization Act of 1994.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Mary Feighny Assistant Attorney General
CJS:JLM:MF:jm
[1] K.S.A. 1999 Supp. 19-101a, as amended by L. 2000, Ch. 159, § 2.
[2] See, also, K.S.A. 1999 Supp. 14-434.
[3] Kan. Const. Art. 12, § 5.
[4] Attorney General Opinion No. 90-107.
[5] 647 F. Supp. 861 (D. Kansas, 1986).
[6] 45 U.S.C.A. § 421 et seq.
[7] CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 113 S.Ct. 1732,123 L.Ed.2d 387 (1993).
[8] 49 U.S.C.A. § 20101 et seq.; Sisk v. National Railroad PassengerCorp., 647 F. Supp. 861 (D. Kansas, 1986).
[9] 49 U.S.C.A. § 20101.
[10] 49 U.S.C.A. § 20106.
[11] 1997 WL 807872 (December 30, 1997).
[12] CSX Transp., Inc. v. Thorsby, 741 F. Supp. 889 (M.D.Ala. 1990);Covington v. Chesapeake and O.R. Co., 708 F. Supp. 806 (E.D.Ky. 1989);Grand T.W. R. Co. v. Merrillville, 738 F. Supp. 1205 (N.D.Ind. 1989);CSX Transp., Inc. v. Tullahoma, 705 F. Supp. 385 (E.D.Tenn. 1988).
[13] K.S.A. 66-274.
[14] 95 Kan. 702 (1915).
[15] Id. at 706-707.
[16] 86 F.3d 626 (6th Cir. 1996).
[17] Id. at 630.
[18] U.S. Const., Art. I, § 8.
[19] 202 F.2d 875 (4th Cir. 1953).
[20] See also, CSX Transportation, Inc. v. City of Plymouth,92 F. Supp.2d 643 (E.D.Mich. 2000) and Ocean View Improvement Corp. v.Norfolk Western Railway Co., 140 S.E.2d 700 (Va. 1965) (state law and ordinances regulating trains stopping on city streets violate the Commerce Clause).
[21] City of Lake Charles v. Southern Pacific Transportation Co.,310 So.2d 116 (La. 1975); Commonwealth v. New York Central Railroad Co.,216 N.E.2d 870 (Mass. 1966).